RONEY v. CHASE, TALBOT & CO.

(District Court, S. D. New York.  December 20, 1907.)

1. ADMIRALTY—PLEADING—SET-OFF.
   A respondent in admiralty cannot set up an independent claim as a defense by way of set-off.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Admiralty, § 327.]

2 SHIPPING—DEMURRAGE—UNAVOIDABLE DELAY IN DISCHARGING.
   A consignee of cargo cannot be held liable for demurrage because of delay in discharging, due to the inability of·the vessel to reach the dock designated for discharge, owing to obstruction by dredges engaged in improving the waterway, in the absence of a contract covering such situation, and where the obstruction was not known when the dock was designated.
   [Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Shipping, § 576.]

In Admiralty.

Owen & Sturges, for libellant.
Hagen, Goodrich & Coughlan, for respondent.

ADAMS, District Judge.  This action was brought by John C. Roney, the master of the schooner Hattie E. King, to recover from Chase, Talbot & Company, a corporation of New York, $98.84, a balance of freight alleged to be due the libellant by virtue of the services of the schooner in transporting a cargo of lumber from Bangor, Maine, to New York, and for demurrage on the schooner in consequence of delay in discharging.  The respondent claimed to be entitled to deduct $10.13 commissions earned by it but there was no contract for the payment of commissions in this case and if they became due from previous transactions, they are not competent as a set-off here.  It is well settled that a respondent cannot in the admiralty make a defence of an independent claim by way of set-off.  Benedict's Adm. p. 264, § 465.

The remaining matter to be considered is that relating to demurrage. The agreement with respect thereto is set forth in the second article of the libel, admitted in the answer, as follows:

"Second. That heretofore and on or about the 15th day of May 1907 the Schooner Hattie E. King being in the Port of Bangor, Maine, and bound on a voyage to New York, Lowell & Engel shipped or caused to be shipped on board said Schooner a cargo of spruce lumber to be transported to New York at an agreed rate of freight and to be delivered to Chase, Talbot & Company the respondent herein.  That the lay days should be at the rate of 20,000 feet per day (Sundays and legal holidays excepted) after forty eight hours for orders, after which demurrage at the rate of ten cents per register ton per day for vessels under 250 tons register, pr 25,000 feet for vessels above 250 tons register.  That a bill of lading for said cargo was duly signed and delivered the shipper to which the libellant prays leave to refer upon the trial of this action."

The only·provision in the bill of lading relating to demurrage was as follows:

"No claim is to be made against shipper, in any event, for demurrage, or damages in the nature of demurrage, caused by detention, in the port of discharge; it being understood that nothing in this clause shall interfere with claim against cargo."

The parties have stipulated that the vessel arrived in the port of New York and reported her readiness to discharge at 9 a. m. June 3d; that she was ordered to deliver her cargo at a yard on the Gowanus Canal; that the vessel did not reach her dock until the 18th at 2:30 p. m. and did not work that day on account of the absence of stevedores whom the vessel was under an obligation to furnish; that the work of discharging commenced on the 19th of June and continued all day; that the discharging continued the 20th until about 11 o'clock when the stevedores threw up the job and no further work was done that day; that on the 21st nothing was done on account of the absence of stevedores until 1:30 p. m., when the discharging was resumed and continued for the balance of the day; that the 23d was Sunday and no work was done; that on the 24th, 25th and 26th, discharging was carried on and completed at 6 p. m. on the last named day; that the basis upon which demurrage is to be calculated is correctly set forth in the 2nd article of the libel, and that, therefore, the vessel should have been discharged on the 17th at 10 a. m. had there not been interference which prevented.

There was an admitted detention of one and a half days occasioned by the stevedores employed by the vessel. This time should be allowed to the respondent. The vessel was detained from June 17th at 10 a. m. to June 26th at 6 p. m., a period of ten days. Deducting the said day and a half, there was a period of 8½ days during which she was detained owing to no fault on her part.

The claim of demurrage is defended upon the ground that the detention at Gowanus Canal was caused by the use of dredges which were at work deepening a public water way, which was not known to the respondent prior to the arrangements having been made for the discharge and the vessel going to the place.

The libellant claims that the obstruction of the canal was of no importance as the delay attending such obstruction was upon the respondent and not upon the vessel.

In order to hold the respondent it should appear that it was under some obligation, express or implied, to receive a definite quantity per day, notwithstanding unavoidable detention caused by the acts of a third party in making a public improvement and making it responsible for such delay. I have been referred to no authority which would cover such a case and it seems to me that justice will be reached by permitting the loss to remain where it fell. The admission of the correctness of the allegations of the 2nd article of the libel does not suffice to establish a case against the respondent for demurrage under the circumstances.

There will be a decree for the libellant for $98.84, with interest.